UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DAWN RUGGIERO,

Case No.: 14-cv-7434

Plaintiff,

-*against*-

Hon. Joseph F. Bianco, USDJ

THE COUNTY OF SUFFOLK AND SUFFOLK
COUNTY POLICE DEPARTMENT,

Defendants.

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PURSUANT TO RULE 12(b(6)**

Steven John Moser (SM1133)
STEVEN J. MOSER, P.C.
3 School Street, Suite 207B
Glen Cove, New York  11542
(516) 671-1150 ● F (516) 882-5420
smoser@moseremploymentlaw.com

*Attorney for Plaintiff*

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ......................................................................... **1**

**LEGAL STANDARD** ........................................................................................ **1**

**STATEMENT OF FACTS** ................................................................................. **1**

**ARGUMENT** ...................................................................................................... **7**

  I.  PLAINTIFF'S FIRST CAUSE OF ACTION STATES A PRIMA FACIE CLAIM
     OF INTERFERENCE AND SHOULD NOT BE DISMISSED ................................ 7

    A. Plaintiff Has Pled Sufficient Facts to Show That (1) She is an Eligible Employee
       Under the FMLA, (2) Defendants Constitute an Employer Under the FMA, (3)
       She Was Entitled to Leave Under the FMLA and (4) She Gave Notice to
       Defendants of Her Intention to Take Leave ........................................................... 8

    B. The Plaintiff Has Alleged Sufficient Facts to Establish the Fifth Element of An
       Interference Claim, Namely That (5) the Defendants Interfered With Her Rights
       Under the FMLA .................................................................................................. 10

       1.  The Defendant interfered with the Plaintiff's rights by requiring her to foresee
           her leave, and refusing to authorize leave unless scheduled. ......................... 10

       2.  The Defendants interfered with the Plaintiff's rights by failing to respond to
           the Plaintiff's request for FMLA leave in a timely manner. ......................... 12

       3.  The Defendants interfered with the Plaintiff's rights by failing to give her an
           opportunity to cure any purported deficiencies in her medical certification. . 12

  II.   PLAINTIFF HAS STATED A VIABLE CLAIM UNDER THE ADA ............... 12

  III.  PLAINTIFF HAS STATED A VIABLE CLAIM FOR FAILURE TO
       ACCOMMODATE IN VIOLATION OF THE ADA .......................................... 13

  IV.  THE PLAINTIFF'S CLAIMS UNDER STATE LAW ARE NOT PRECLUDED
       BY HER FAILURE TO FILE A NOTICE OF CLAIM ...................................... 16

  V.  DEFENDANTS' ARGUMENT THAT THERE IS NO LEGAL OR FACTUAL
       REASON TO AMEND THE COMPLAINT TO INCLUDE OTHER
       PLAINTIFFS OR CLAIMS IS PREMATURE .................................................... 17

**REQUEST TO REPLEAD** ........................................................................... **18**

**CONCLUSION** .............................................................................................. **18**

# TABLE OF AUTHORITIES

**Supreme Court Opinions**

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ..................................................... 1

Ashcroft v. Iqbal, 556 U.S. 662 (2009) ................................................................. 1

Bd. of Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356, 121 S. Ct. 955 (2001) ............................ 13

US Airways, Inc. v. Barnett, 535 U.S. 391, 122 S. Ct. 1516, 152 L. Ed. 2d 589 (2002) ........... 15

**Second Circuit Opinions**

Sharkey v. Quarantillo, 541 F.3d 75 (2d Cir. 2008) ................................................. 1

Petrucelli v. Hasty, 605 F. Supp. 2d 410 (E.D.N.Y. 2009) ......................................... 1

Reilly v. Revlon, Inc., 620 F. Supp. 2d 524 (S.D.N.Y. 2009) ...................................... 7

Anderson News, L.L.C. v. Am. Media, Inc., 680 F.3d 162 (2d Cir. 2012) ................................. 9

FragranceNet.com, Inc. v. FragranceX.com, Inc., 679 F. Supp. 2d 312 (E.D.N.Y. 2010) ........... 9

Rinaldi v. Quality King Distribs., Inc., 29 F. Supp. 3d 218 (E.D.N.Y. 2014) ....................... 9, 10

Di Giovanna v. Beth Isr. Med. Ctr., 651 F. Supp. 2d 193 (S.D.N.Y. 2009) ................................. 10

Maglietti v. Nicholson, 517 F. Supp. 2d 624 (D. Conn. 2007) ................................... 12

Demoret v. Zegarelli, 451 F.3d 140 (2d Cir. 2006) ................................................. 12

Sobhi v. Sociedad Textil Lonia Corp., 2014 U.S. Dist. LEXIS 179427 (S.D.N.Y. Dec. 30, 2014) 14

Brady v. Wal-Mart Stores, Inc., 531 F.3d 127 (2d Cir. 2008) ................................... 14

Jackan v. N.Y. State DOL, 205 F.3d 562 (2d Cir. 2000) ........................................ 14

Brady v. Wal-Mart Stores, Inc., 455 F. Supp. 2d 157 (E.D.N.Y. 2006) ............................ 14, 15

EEOC v. Yellow Freight Sys., No. 98 Civ. 2270 (THK), 2002 U.S. Dist. LEXIS 16826 (S.D.N.Y. Sept. 4, 2002) ................................................................................. 15

Picinich v. UPS, 321 F. Supp. 2d 485 (N.D.N.Y. 2004) ........................................ 15

Snell v. Suffolk Cnty., 782 F.2d 1094 (2d Cir. 1986) ............................................ 17

Ercole v. Lahood, No. 07-CV-2049 (JFB)(AKT), 2011 U.S. Dist. LEXIS 32753, 2011 WL 1205137 (E.D.N.Y. Mar. 29, 2011) ................................................................. 18

**Federal Court Opinions**

Regan v. Natural Res. Group, Inc., 345 F. Supp. 2d 1000 (D. Minn. 2004) .............................. 10

Barnett v. U.S. Air, Inc., 228 F.3d 1105 (9th Cir. 2000) ......................................... 15

**United States Code**

29 U.S.C.A. § 2612(a)(1)(C) ........................................................................ 8

29 U.S.C.A. § 2613 ................................................................................. 9

42 U.S.C.S. § 12112(a)(5)(A) ...................................................................... 14

**State Court Opinions**

Phillips v. City of N.Y., 66 A.D.3d 170 (1st Dep't 2009) ........................................................ 15

Mills v. Cnty. of Monroe, 59 N.Y.2d 307, 464 N.Y.S.2d 709, 451 N.E.2d 456 (1983) ............ 16

**State Statutes**

N.Y. Exec. Law § 291(1) ........................................................................................................ 16

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................................................. 1

**Other**

29 C.F.R. § 825.220(a)(1) (2013) ........................................................................................... 10

29 C.F.R. § 825.220(b) (2013) ............................................................................................... 10

29 C.F.R. § 825.203 (2013) .................................................................................................... 11

29 C.F.R. § 825.302(e) (2013) ............................................................................................... 11

29 C.F.R. § 825.302(f) (2013) ................................................................................................ 11

29 C.F.R. § 825.300(b)(1) (2013) ........................................................................................... 12

29 C.F.R. § 825.305(d) (2013) ............................................................................................... 12

PRELIMINARY STATEMENT

Plaintiff respectfully submits this memorandum of law in opposition to the motion by Defendants County of Suffolk and Suffolk County Police Department ("SCPD") (collectively the "Defendants") to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failing to state a claim upon which relief can be granted.

The Plaintiff requests that the motion be denied in its entirety, as the Plaintiff has met the pleading standard of Bell Atlantic Corp. V. Twombly, 550 U.S. 544, 555 (2007). However, to the extent that the Court determines that the complaint is deficient, Plaintiff respectfully requests leave to replead.

LEGAL STANDARD

Pursuant to Rule 12(b)(6), dismissal is appropriate if the plaintiff has failed to offer sufficient factual allegations to make the asserted claim plausible on its face. Sharkey v. Quarantillo, 541 F.3d 75, 92 (2d Cir. 2008). Thus a court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. This "plausibility" requirement does not mandate "a universal standard of heightened fact pleading." Petrucelli v. Hasty, 605 F. Supp. 2d 410, 417 (E.D.N.Y. 2009) (quoting Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007)). In Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009), the Supreme Court noted that, "[d]etermining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

STATEMENT OF FACTS

The SCPD is an employer with more than 50 employees, engaged in commerce or

1

in an industry or activity affecting commerce, and is a public agency. Complaint ¶ 29. Plaintiff has been employed as a Public Safety Dispatcher I, a civilian employee position, in the 3rd Precinct of the SCPD from November 13, 2001 to the present. Compl. ¶ 30. As a Public Safety Dispatcher I, Plaintiff's job functions include monitoring 911 emergency calls and dispatching the calls to the appropriate police unit, while continuously monitoring five computers. ¶ 31.

The basic terms and conditions of Plaintiff's employment were covered by the Collective Bargaining Agreement ("CBA") between the Association of Municipal Employees ("AME"), in effect between November 13, 2001 and December 31, 2013. Compl. ¶ 32. Plaintiff is a member of the AME and a member in good standing. ¶ 33.

Plaintiff works rotating blocks of 5 continuous days a week for a total of 35 hours, plus additional mandatory overtime hours. Compl. ¶ 34. Plaintiff's schedule alternates weekly. ¶ 35. She works a shift from 8:00 a.m. to 4:00 p.m. for one week and then a shift from 4:00 p.m. to 12:00 a.m. the next week ¶ 35. Mandatory overtime hours are unpredictable, often not scheduled in advance, but assigned during a shift and then added onto that shift consecutively  ¶ ¶ 36-37. The SCPD has added mandatory overtime hours, which could not be refused, to Plaintiff's shifts weekly, since 2013. ¶ 38.

On January 31, 2013, Brian Ruggiero ("Brian"), Plaintiff's son, was diagnosed with generalized anxiety disorder and delayed sleep disorder Compl. ¶ 39. Generalized anxiety disorder and delayed sleep disorder are serious health conditions involving continuing treatment by health care providers.  ¶ 40.

Due to his serious health conditions, Brian was unable to attend school and he required Plaintiff's assistance for his basic medical needs, personal needs, and

transportation. Compl. ¶¶ 41-42. Plaintiff's presence provided psychological comfort to Brian and was beneficial to him and assisted in his recovery. ¶¶ 43-44.

On May 14, 2013, Plaintiff submitted by application a request to the SCPD for Family and Medical Leave (the "FMLA request") to care for Brian. Compl. ¶ 45. During the 12 months prior to Plaintiff's FMLA request, Plaintiff worked more hours than the minimum of 1,250 hours required for leave under the FMLA. ¶ 46. During the 12 months prior to Plaintiff's FMLA request, Plaintiff worked 479 hours of overtime. ¶ 47.

The FMLA request gave notice to the SCPD of Plaintiff's intention to take FMLA leave. Compl. ¶ 48. The FMLA request included a verifying medical certification (the "medical certification") by Brian's health care provider. ¶ 49. The medical certification stated that Plaintiff needed to work intermittently or on less than a full schedule for her son's continuing treatment. ¶ 50. The medical certification provided the date Brian's medical condition began, its estimated duration and a medical description of Brian's health condition.  ¶ 51. The medical certification described the duration of Brian's condition as an estimated 1 month for Brian's anxiety to be "well controlled," but "impossible to predict with certainty."  ¶ 52. The medical certification described the need for Plaintiff's FMLA leave, as a result of her son's health condition, as "ongoing-indefinitely." ¶ 53.

On May 23, 2013, Jennifer McNamara, Esq., Acting Director of Labor Relations for Suffolk County sent Plaintiff a letter denying the FMLA request. Compl. ¶ 54. The basis of the denial was that "intermittent Family Medical Leave must be scheduled leave with the approval of the Department and not disrupt departmental operations." ¶ 55. The SCPD did not give Plaintiff an opportunity to cure any purported deficiencies in the

FMLA request. ¶ 56.   After Plaintiff submitted the FMLA request, the SCPD did not

give Plaintiff an opportunity to consult with the SCPD to work out the dates or times for

a mutually suitable schedule for her FMLA leave that would not unduly disrupt

Departmental operations. ¶ 58. After Plaintiff submitted the FMLA request, the SCPD

did not initiate discussions with Plaintiff about making arrangements for a schedule of

dates or times for her FMLA leave, subject to the approval of her son's health care

provider. ¶ 59.  After Plaintiff submitted the FMLA request, the SCPD did not ask

Plaintiff to attempt to make further arrangements for a schedule of FMLA leave, subject

to the approval of her son's health care provider. ¶ 60.

On or about May 28, 2013, Plaintiff requested a medical leave of absence from

the SCPD for herself because she was suffering from anxiety and post-traumatic stress

disorder ("PTSD"). Compl. ¶ 61. PTSD is a recognized disability under ADA

regulations. ¶ 62. Beginning in May of 2013, Plaintiff experienced rapid, consecutive,

uncontrollable thoughts about terrifying and traumatic events and emergencies she had

handled and been witness to as a Public Safety Dispatcher. ¶ 63. Some of the traumatic

events Plaintiff rapidly recalled during her PTSD, some from years earlier, included:

police or members of the public screaming, being shot, stabbed or beaten, or pleading for

help and sobbing, or finding an immediate family member dead from suicide by hanging.

¶ 64.

PTSD is a type of Anxiety Disorder and is given Code 309.81 under the

Diagnostic and Statistical Manual of Mental Disorders IV ("DSM IV"). Compl. ¶ 65.

Diagnosis of PTSD requires exposure to an event that involved or held the threat of

death, violence or serious injury. ¶ 66. Researchers at Northern Illinois University found,

4

in a research study of the relationship between work-related trauma exposure and PTSD symptomatology in emergency dispatchers, that the dispatchers had high levels of peritraumatic stress, which correlated positively with PTSD symptomatology. ¶ 67.

Despite the high levels of stress that Plaintiff and her co-workers endure on a daily basis, there is no on-site counselor or mental health professional available. Compl. ¶ 68. There is no "downtime" between extremely stressful calls to allow Pubic Safety Dispatchers and 911 Operators to calm themselves.  Compl. ¶ 68.  Rather than being supported in the important work they do for the public, Public Safety Dispatchers and 911 Operators have been told by SCPD representatives that stress is part of their job, they are working in these conditions by their own choice, and no one is forcing them to do this work. ¶ 69. At times during 2013 and 2014, they were required to work extended shifts of 12 hours with few breaks. There were no 911 Operators or Public Safety Dispatchers hired by the SCPD in 2012. ¶ 69. Furthermore, the SCPD had needlessly increased these employees' workload by routing non-emergency calls through the 9-1-1 system. ¶ 69.

The Collective Bargaining Agreement (the "CBA") of the Suffolk County Association of Municipal Employees states in section 8.8 that an employee will earn sick time "at a rate of one half day per pay period. Compl. ¶ 70. If all sick time has been used, extended sick leave for an illness which lasts longer than 20 work days shall be granted at the rate of one pay period at half pay for each year of continuous service completed." ¶ 70.

Plaintiff had sufficient years of continuous service with the SCPD to qualify for extended sick leave, for four bi-weekly pay periods [40 days], under section 8.8 of the CBA, when she applied for leave for her PTSD. Compl. ¶ 71. On or about May 30, 2013,

the SCPD denied Plaintiff's request for extended sick leave with ½ pay. ¶ 72. The SCPD granted Plaintiff a leave of absence, in which she would use accrued sick time from May 28, 2013 to June 6, 2013, with pay, then unpaid sick leave from June 7, 2013 to August 11, 2013 [76 workdays]. ¶ 73.

The SCPD explained that since Plaintiff had an extended sick leave with ½ pay back in 2006 for "adjustment disorder with mixed anxiety and depressed mood," Plaintiff could not be compensated, some seven years later, in 2013, for an extended sick leave for "anxiety and post-traumatic stress syndrome" as it was, according to an SCPD payroll supervisor, purportedly the same illness that Plaintiff had in 2006. Compl. ¶ 74. The SCPD has determined that compensation at ½ pay for "extended sick leave may be used once per illness…applied equally to all employees…regardless of disability," and not for "a recurrence of the same illness." ¶ 75. However, according to the DSM IV, "anxiety and post-traumatic stress syndrome" is not the same illness as "adjustment disorder with mixed anxiety and depressed mood;" they are two different mental disorders. ¶ 76. Post-traumatic Stress Disorder is a type of anxiety disorder and is given DSM IV Code 309.81, whereas DSM IV Code 309.28 is used for an Adjustment Disorder, With Mixed Anxiety and Depressed Mood. ¶ 76.

Since being made aware of Plaintiff's disability, the SCPD has failed to engage in an interactive process with Plaintiff. Compl. ¶ 77. As a result of the SCPD's denial of ½ pay to Plaintiff for her mental disability, during her extended sick leave, she experienced financial distress, in addition to the symptoms of PTSD, forcing her to return to work before the end of her sick leave, on July 13, 2013. ¶ 78.

On June 27, 2013, Plaintiff filed a complaint of discrimination with the New York

State Division of Human Rights (the "NYSDHR") for disability discrimination, which was dually filed with the EEOC. Compl. ¶ 79. On July 1, 2013, Plaintiff filed a grievance against the SCPD for its denial of ½ pay for extended sick leave. ¶ 80. SCPD denied the grievance as being without merit on July 22, 2013. ¶ 81. On December 27, 2013, the NYSDHR informed Plaintiff and the SCPD that it found probable cause for employment discrimination based on disability. ¶ 82. A public hearing was scheduled for early June 2014 before an Administrative Law Judge of the New York State Division of Human Rights. ¶ 83. Before the hearing, the Division of Human Rights dismissed the charges on the basis of administrative convenience to allow Plaintiff to pursue her remedies in court. ¶ 83. On September 24, 2014, Plaintiff received a notice of right to sue letter from the Equal Employment Opportunity Commission. ¶ 84.

Despite these specific factual allegations, Defendants request dismissal of all claims for failure to state a cause of action.

<u>ARGUMENT</u>

I.  PLAINTIFF'S FIRST CAUSE OF ACTION STATES A PRIMA FACIE CLAIM OF INTERFERENCE AND SHOULD NOT BE DISMISSED

To establish a prima facie case of interference, a plaintiff must demonstrate that "(1) she is an eligible employee under the FMLA; (2) defendants constitute an employer under the FMLA; (3) she was entitled to leave under the FMLA; (4) that she gave notice to defendants of her intention to take leave; and (5) defendants denied her benefits to which she was entitled by the FMLA." <u>Reilly v. Revlon, Inc.</u>, 620 F. Supp. 2d 524, 535 (S.D.N.Y. 2009) (citing <u>Esser v. Rainbow Advertising Sales Corp.</u>, 448 F. Supp. 2d 574, 580 (S.D.N.Y. 2006)).

A. <u>Plaintiff Has Pled Sufficient Facts to Show That (1) She is an Eligible Employee Under the FMLA, (2) Defendants Constitute an Employer Under the FMA, (3) She Was Entitled to Leave Under the FMLA and (4) She Gave Notice to Defendants of Her Intention to Take Leave.</u>

Here, the Plaintiff was an eligible employee under the FMLA (Compl. ¶ ¶ 30-38, 46-47, 86), and the Defendants are an employer under the FMLA (¶ ¶ 26-29, 87-88). Plaintiff also explains how and why she was entitled to leave under the FMLA, including facts that indicate the nature of her son's illness. ¶ ¶ 39-45, 49-53, 89-91. Finally, Plaintiff requested intermittent leave on May 14, 2013. ¶ 45.

Without reference to the pleading requirements, Defendants state a laundry list of items that Plaintiff allegedly did not include in her Complaint. Def. Memorandum of Law in Support of Motion to Dismiss at 5-8. First, Defendants state that because Plaintiff did not attach a copy of her FMLA application, this "makes her claim of entitlement insufficient." Def. Memorandum of Law at 5. Defendants fail to cite any legal authority for this proposition.

Defendants further state that, "Plaintiff merely claims in conclusory fashion that she was entitled to intermittent leave, but does not assert facts to support that conclusion." Def. Memorandum of Law at 5. A review of the Complaint shows that in fact Plaintiff has met her pleading burden of facial plausibility. Contrary to what the Defendants argue, the Plaintiff has alleged sufficient facts to establish her entitlement to FMLA leave. Compl. ¶ ¶ 39-45, 49-53, 89-91. Plaintiff alleged that she was entitled to FMLA leave "in order to care for the spouse, or a son, or a daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C.A. §2612(a)(1)(C); Complaint ¶s 39-44. Defendants further state that Plaintiff failed to state that such leave may be taken intermittently or on a reduced schedule when

8

"medically necessary." 2612(b)(1). However, here too Plaintiff has met her burden of facial plausibility, pleading facts about the medical nature of her son's condition and her need to work intermittently or on a less than full schedule as a result (Complaint ¶ 49-53).

Defendants next allege that Plaintiff did not assert that a certification under Section 2613 of the FMLA was submitted and that such certification allegedly did not meet the requirements of the Act. Def. Memorandum of Law at 5-6. Plaintiff's Complaint clearly refers to the submission of her certification to her employer (Complaint ¶ 49-53). The soundness of the certificate (whether Plaintiff was needed to take care of her son, a time-estimate of the care-taking, date of commencement and probable duration of the serious health condition, medical facts regarding the condition) are fact-specific questions and fact-specific questions are not to be decided on the pleadings. Anderson News, L.L.C. v. Am. Media, Inc., 680 F.3d 162, 185 (2d Cir. 2012).

Similarly, Defendants' allegations about when Plaintiff should have scheduled treatment, provided a schedule, or provided sufficient notice are further fact-specific questions that should not be decided on the pleadings. Indeed "[t]he court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at a trial, but merely to determine whether the complaint itself is legally sufficient." FragranceNet.com, Inc. v. FrangranceX.com, Inc., 679 F.Supp.2d 312, 324 (E.D.N.Y. 2010) (internal quotations and citations omitted).

Finally, Rinaldi v. Quality King Distributors, Inc., 29 F. Supp. 3d 218 (E.D.N.Y. 2014) is inapplicable.   The plaintiff in Rinaldi alleged that her employer interfered with her rights under the FMLA not by *denying* her request, but by *"discouraging"* her from taking intermittent leave. Id. at 229.   The court held that a "plaintiff proceeding on a

9

'discouragement theory' must offer evidence that she tried to assert her FMLA rights but was discouraged from doing so in such a way that would have 'dissuaded a similarly situated employee of ordinary resolve from attempting to exercise his or her FMLA rights.'"   Id.   Unlike the plaintiff in Rinaldi, Ms. Ruggiero was never offered the opportunity to take FMLA leave, nor is Ms. Ruggiero claiming an interference claim based upon a "discouragement theory."   Rather, it is alleged that the Defendants improperly denied leave to which she was entitled.  Compl. ¶ 54.

B.   The Plaintiff Has Alleged Sufficient Facts to Establish the Fifth Element of An Interference Claim, Namely That (5) the Defendants Interfered With Her Rights Under the FMLA.

"An employer is prohibited from interfering with, restraining, or denying the exercise of (or attempting to exercise) any rights provided by the Act." 29 C. F.R. § 825.220(a)(1). "To establish an FMLA interference claim, a plaintiff need prove only that an employer in some manner impeded the employee's exercise of his or her rights protected provided by the statute." DiGiovanna v. Beth Israel Med. Ctr., 651 F. Supp. 2d 193, 199 (S.D.N.Y. 2009) (citing 29 C.F.R. § 825.220). Any violation of FMLA or its regulations constitutes interference. Regan v. Natural Res. Grp., Inc., 345 F. Supp. 2d 1000, 1010 (D. Minn. 2004); 29 C.F.R. § 825.220(b).

1.   The Defendant interfered with the Plaintiff's rights by requiring her to foresee her leave, and refusing to authorize leave unless scheduled.

By requiring intermittent leave to be "scheduled leave" the SCPD violated the FMLA. The Defendant's denial letter does not state that the Plaintiff's son did not suffer from a serious medical condition. Rather, the only reason provided by the SCPD is that "intermittent Family Medical Leave must be scheduled leave, with the approval of the Department, and not disrupt departmental operations." (emphasis supplied.)

10

The SCPD appears to be aware of its obligations under the FMLA. Its denial letter selectively quotes (but distorts the meaning of) the FMLA regulations, when it mentions that intermittent leave "must be scheduled" and "must…not disrupt departmental operations." The regulations regarding intermittent leave state that "[i]f an employee needs leave intermittently or on a reduced leave schedule <u>for planned medical treatment</u>, then the employee must make a reasonable effort to schedule the treatment <u>so as not to disrupt unduly the employer's operations</u>." 29 C.F.R. § 825.203 (emphasis supplied).

29 C.F.R. § 825.302(e) also states, in part:

When planning medical treatment, the employee must consult with the employer and make a reasonable effort to schedule the treatment <u>so as not to disrupt unduly the employer's operations</u>[1], subject to the approval of the health care provider.

29 C.F.R. § 825.302(f), which relates to "foreseeable FMLA leave", states:

The employee and employer shall attempt to work out a schedule for such leave that meets the employee's needs <u>without unduly disrupting the employer's operations</u>[2], subject to the approval of the health care provider.

Here, the Defendants' denial letter misses the point. The absences required by Dawn's son's medical conditions did not relate to "planned medical treatment" nor were they "foreseeable." Therefore, the SCPD was not within its rights when it insisted that all intermittent leave be "scheduled leave." "[N]ot all absences caused by certain serious health conditions will be predictable, and the FMLA does not require a health care provider to submit an exact schedule of leave when submitting the medical certification… The FMLA does not permit an employer to withhold approval of a request for FMLA leave if an exact schedule of leave is not submitted." U.S. DOL WHD Opinion Letter FMLA 2002-6 Dec 4, 2002, <u>available at</u>

---

[1] Emphasis supplied.
[2] Emphasis supplied.

http://www.dol.gov./whd/opinion/FMLA/2002_12_04_6_FMLA.pdf

    2. <u>The Defendants interfered with the Plaintiff's rights by failing to respond to the Plaintiff's request for FMLA leave in a timely manner.</u>

"When an employee requests FMLA leave, or when the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason, the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days, absent extenuating circumstances." 29 C.F.R. 825.300(b)(1).

Here, the plaintiff submitted her request for FMLA leave to the SCPD on May 14, 2013. Compl. ¶ 45. The SCPD did not respond until May 23, 2013. Compl. ¶ 54.

    3. <u>The Defendants interfered with the Plaintiff's rights by failing to give her an opportunity to cure any purported deficiencies in her medical certification.</u>

Where an employer finds a certification incomplete, it must give the employee an opportunity to cure any deficiencies. 29 C.F.R. 825.305(d). Here, the SCPD never gave Dawn an opportunity to cure any purported deficiencies in her FMLA request. Compl. ¶ 56.

## II.  PLAINTIFF HAS STATED A VIABLE CLAIM UNDER THE ADA

Defendants argue that Plaintiff's claim fails because she does not establish that she suffered an adverse employment action in Defendants' denial of her request for leave with ½ pay. Def. Memorandum of Law at 8-9. This argument is without merit.

"Prototypical examples of adverse employment actions include termination, demotion via a reduced wage, salary, or job title, a <u>material loss of benefits</u>, or significantly reduced responsibilities." <u>Maglietti v. Nicholson</u>, 517 F. Supp. 2d 624, 628 (D. Conn. 2007) (citing <u>Demoret v. Zegarelli</u>, 451 F.3d 140 151 (2d Cir. 2006) (emphasis supplied). The Plaintiff's loss of contractually entitled benefits, which forced her to return

to a position in which she was entrusted with the lives and safety of others, is an adverse employment action.

Defendants further argue that Plaintiff cannot prove that she was denied leave ½ pay *because of her disability*, and that therefore her ADA claim should be dismissed. However, Defendants' argument is premature. At the very least, there is a question of fact as to whether the Plaintiff's disability was a motivating factor in the denial of the leave with ½ pay. The Defendants virtually concede that they used the Plaintiff's disabling illness in 2006 to justify denial of leave with ½ pay seven years later in 2013, and claim that the Plaintiff's 2006 illness and 2013 illness were one and the same.

The ADA "prohibits employers from 'utilizing standards, criteria, or methods of administration . . . that have the effect of discrimination on the basis of disability.'" Bd. of Trs. of the Univ. of Ala. v. Garrett, 531 U.S. 356, 361, 121 S. Ct. 955, 961 (2001) (quoting § 12112(b)(3)(A)) (emphasis supplied). Here the method of interpretation of the contract had the direct effect of discriminating against the Plaintiff on the basis of her disability.

## III. PLAINTIFF HAS STATED A VIABLE CLAIM FOR FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADA

To establish a prima facie case for a failure to accommodate, a plaintiff must show: "'(1) that [she] is an individual who has a disability within the meaning of the statute, (2) that an employer covered by the statute had notice of [her] disability, (3) that with reasonable accommodation, [she] could perform the essential functions of the position…, and (4) that the employer has refused to make such accommodations.'" Sobhi v. Sociedad Textil Lonia Corp., 2014 U.S. Dist. LEXIS 179427, 13-14 (S.D.N.Y Dec. 30,

2014) (quoting Stone v. City of Mount Vernon, 118 F.3d 92, 96-97 (2d Cir. 1997) (citation omitted)).

Plaintiff's pleadings have met this standard. Compl. ¶ ¶ 95-99, 101-105, 109-115, 119-122.

Defendants argue that Plaintiff sought no accommodation and that therefore her claims fail. However, discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability…." 42 USCS § 12112(a)(5)(A).

The Second Circuit has held that "the ADA contemplates that employers will engage in an interactive process with their employees and in that way work together to assess whether an employee's disability can be reasonably accommodated." Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 135 (2d Cir. 2008)(quoting Jackan v. N.Y. State Dep't of Labor, 205 F. 3d 562, 566 (2d Cir 2000) (internal quotations omitted). Generally, "'the initial burden of requesting an accommodation is on the employee and it is only after such a request has been made that the employer must engage in the 'interactive process' of finding a suitable accommodation.'" Brady 455 F. Supp. 2d at 174 (quoting Felix v. New York City Transit Auth., 154 F. Supp.2d 640 656-57 (S.D.N.Y. 2001)). However, the employer's obligation to enter into the interactive process is not triggered only by a specific request for an accommodation, but also by simply becoming aware of the disability. Id.

In this case Defendants had knowledge of the Plaintiff's disability, as the SCPD was presented with the Plaintiff's request for medical leave of absence on the basis that she suffered from a disability. Compl. ¶ 61. In the Brady case, the Second Circuit held

14

that Wal-Mart's failure to engage in the interactive process, after becoming aware of the employee's disability, precluded summary judgment on the failure to accommodate claim. Id. Therefore, not only has the plaintiff alleged a viable cause of action, but the SCPD's refusal to engage in the interactive process precludes summary judgment.

In addition, reasonable accommodations have been held to include, "job restructuring, part-time or modified work schedules, [and] reassignment to a vacant position." EEOC v. Yellow Freight Sys., No. 98 Civ. 2270 (THK), 2002 U.S. Dist. LEXIS 16826, at *59 (S.D.N.Y. Sept. 4, 2002) (quoting 42 U.S.C. § 12,111 (9 ?YEAR?) (B)). Leaves of absence, including those that are paid pursuant to company policy, may be considered a reasonable accommodation. Picinich v. UPS, 321 F. Supp. 2d 485, 516 (N.D.N.Y. 2004) (citing Criado v. IBM Corp., 145 F.3d 437, 444 (1st Cir. 1998)).

As part of her claim, Plaintiff clearly states that Defendants failed to engage in the interactive process with the Plaintiff and otherwise failed to make a reasonable accommodation for her known disabilities and also failed to enact and/or implement policies regarding engaging in an interactive process with Public Safety Dispatchers and 911 Operators, including the Plaintiff. Compl. ¶ ¶ 77, 107-110, 112-113, 117-118, 120-121. The Courts have recognized that without this interactive process, "many employees will be unable to identify effective reasonable accommodations." Phillips v. City of New York, 66 A.D.3d 170, 175 (N.Y. App. Div. 1st Dep't 2009); Barnett v. U.S. Air, Inc. 228 F.3D 1105, 1116 (9th Cir. 2000), en banc), vacated on other grounds 535 U.S. 391, 122 S. Ct. 1516, 152 L. Ed. 2d 589 (2002). This good faith interactive process is "the key mechanism for facilitating the integration of disabled employees into the workplace" Barnett 228 F.3d at 1116.

15

Defendants further argue that Plaintiff fails to show that she suffered an adverse employment action as a result of Defendants' failure to engage in the interactive process. As noted supra.: "Prototypical examples of adverse employment actions include termination, demotion via a reduced wage, salary, or job title, a material loss of benefits, or significantly reduced responsibilities." Maglietti v. Nicholson, 517 F. Supp. 2d 624, 628 (D. Conn. 2007) (citing Demoret v. Zegarelli, 451 F.3d 140 151 (2d Cir. 2006) (emphasis supplied). The Plaintiff's loss of contractually entitled benefits, which forced her to return to a position in which she was entrusted with the lives and safety of others, is an adverse employment action.

## IV. THE PLAINTIFF'S CLAIMS UNDER STATE LAW ARE NOT PRECLUDED BY HER FAILURE TO FILE A NOTICE OF CLAIM

Notice of claim requirements do not apply to actions brought to vindicate a public interest. Mills v. Cnty. Of Monroe, 59 N.Y.2d 307, 311, 464 N.Y.S.2d 709, 711, 451 N.E.2d 456, 458 (1983). "The opportunity to obtain employment without discrimination because of age, race, creed, color, national origin, sexual orientation, military status, sex, marital status, _or disability_, is hereby recognized as and declared to be a civil right." NY Executive Law § 291(1). The exception to the notice of claim requirement has been applied to all civil rights actions. Mills, 59 N.Y.2d at 311, 464 N.Y.S.2d at 711. And, all actions brought to enforce civil rights can be said to be in the public interest. Id.

This exception has also been applied to actions that are brought to protect an important right, which seek relief for a similarly situated group, and whose resolution would directly affect the rights of that group. Id. These cases "are deserving of special treatment. The interests in their resolution on the merits override the State's interest in receiving timely notice before commencement of an action." Id.

16

This case is the first in a series of suits against the SCPD to remedy policies with regard to 911 Operators and Public Safety Dispatchers that are in direct violation of the FMLA, the ADA, and the NYSHRL. 911 Operators and Public Safety dispatchers are entrusted with the health, safety, and very lives of the public. A healthy environment for this group translates into better services to the public, to whom they serve as a lifeline.

## V. DEFENDANTS' ARGUMENT THAT THERE IS NO LEGAL OR FACTUAL REASON TO AMEND THE COMPLAINT TO INCLUDE OTHER   PLAINTIFFS OR CLAIMS IS PREMATURE

Defendants argue that Plaintiff has failed to establish the statutorily required elements for a class action suit or to consolidate all of the individual cases for trial. However, at this stage of the pleadings, Plaintiff is not called upon to establish or prove these elements. There is at least a question of fact as to whether the court should grant permission to amend this complaint to include the ADA and NYHRL discrimination claims for individual and systemic disparate treatment, for Plaintiff's co-workers with disabilities, who were also subjected to the SCPD's discrimination employment policy, or, alternately, whether the individual cases should be consolidated for joint trial (Complaint ¶ 20).

Further, Defendants' argument that Plaintiff's invoking the "single filing rule" must be denied as she has no standing is without merit. Plaintiff is merely requesting the application of the single filing rule as adopted by the Second Circuit which would allow her co-workers to add their claims to the present complaint without further review by the EEOC. Snell v. Suffolk County, 782 F.2d 1094, 1101 (2d Cir. N.Y. 1986). This is just such a case where the single filing rule should be applied.

17

<u>REQUEST TO REPLEAD</u>

To the extent that the Court finds that the Plaintiff has not met her pleading requirements, the Plaintiff respectfully requests that the Plaintiff be allowed to replead. In the instant case, the Plaintiff has not yet attempted to cure any pleading deficiencies. The Plaintiff has shown that she will be able to amend the complaint in a manner which would survive dismissal. Therefore, leave to replead should be granted. <u>See</u> <u>Ercole v. Lahood</u>, 2011 U.S. Dist. LEXIS 32753, 53, 2011 WL 1205137 (E.D.N.Y. Mar. 29, 2011) (compiling cases).

<u>CONCLUSION</u>

For the reasons stated herein, the Defendants' motion to dismiss should be denied in its entirety. In the event that the Court finds an inadequacy in the Complaint, Plaintiff should be granted leave to replead.

Respectfully submitted,
STEVEN J. MOSER, P.C.

/s/
By:  Steven John Moser
3 School Street, Suite 207B
Glen Cove, New York  11542
516-671-1150
smoser@moseremploymentlaw.com
*Attorneys for Plaintiffs*

18