FILED
CLERK
3/3/2016
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X **Docket#**
DAWN RUGGIERO,                 : 14-cv-07434-JFB-GRB
        Plaintiff,    :
                              :
  - versus -                  : U.S. Courthouse
                            : Central Islip, New York
                            :
THE COUNTY OF SUFFOLK,         :
        et al.,             : January 14, 2016
        Defendants    :
------------------------------X

TRANSCRIPT OF CIVIL CAUSE FOR BENCH RULING
BEFORE THE HONORABLE JOSEPH F. BIANCO
UNITED STATES DISTRICT JUDGE

**A   P   P   E   A   R   A   N   C   E   S:**

<u>**For the Plaintiff**</u>:        **Steven John Moser, Esq.**
                                     3 School Street, Suite 207B
                                     Glen Cove, NY 11542

<u>**For the Defendant**</u>:        **Megan E. O'Donnell, Esq.**
                                     Suffolk County
                                     Attorney's Office
                                     H. Lee Dennison Building
                                     100 Veterans Memorial Highway
                                     P.O. Box 6100
                                     Hauppauge, NY 11788

<u>**Transcription Service**</u>:    **Transcriptions Plus II, Inc.**
                                     61 Beatrice Avenue
                                     West Islip, New York 11795
                                     <u>laferrara44@gmail.com</u>

Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

1    THE CLERK:  Calling case 14-cv-7434, Ruggiero
2 v. The County of Suffolk.
3    Please state your appearance for the record.
4    MR. MOSER:  Steven John Moser for the
5 plaintiff.
6    MS. O'DONNELL:  And Megan O'Donnell for the
7 County.
8    THE COURT:  Okay.  Good afternoon.  This is
9 Judge Bianco.
10    I scheduled this telephone conference because I
11 wanted to place the Court's ruling on the record with
12 respect to the pending motion to dismiss.  This should
13 take about fifteen minutes for me to read this into the
14 record and then I can answer any questions, if you have
15 any, but I didn't want there to be a delay with a written
16 opinion, so I am going to place it on the record and if
17 you want to order a copy of the transcript, you can
18 through the clerk's office.
19    The defendants moved to dismiss the claims
20 against them which are under the FMLA, the ADA and the
21 New York State Human Rights Law, arguing that plaintiff
22 has failed to state claims under the FMLA and the ADA and
23 failed to comply with the notice requirement for purposes
24 of the New York State claims.
25    The defendants also argue that plaintiff should

Proceedings

3

1  not be permitted to amend her complaint to include other
2  plaintiffs or other claims.
3          For reasons I'll set forth in a moment, I'm
4  denying the motion although with respect to the issue of
5  not amending the complaint, I think it's premature.  So
6  on that issue, I'm denying it pending the plaintiff's
7  actually moving to amend the complaint to add a
8  particular plaintiff or a particular claim because the
9  Court can't analyze it in the abstract.  So let me state
10 the reasons for the Court's ruling in more detail.
11         First, with respect to the motion to dismiss
12 standard of review, it's well settled, both sides
13 obviously agree what the standard is.  The Court must
14 accept the factual allegations set forth in the complaint
15 as true, draw all reasonable inferences in the
16 plaintiff's favor and determine whether or not there is a
17 plausible claim that exists under the Supreme Court's
18 standard in Iqbal and the case of Bell Atlantic v.
19 Twombly, 550 U.S. 554 (2007), Supreme Court case and
20 that's the standard the Court is applying to the
21 complaint in this case.
22         Just briefly by way of background, plaintiff,
23 who works for the Suffolk County Police Department as a
24 public safety dispatcher alleges that the Suffolk County
25 Police Department improperly denied the intermittent

4

Proceedings

1  leave she requested under the FMLA to care for her son
2  who suffered from "severe behavioral and mental
3  disorders."  That's at paragraph 5 of the complaint.
4          The plaintiff further alleges that when she
5  developed post-traumatic stress disorder, the Suffolk
6  County Police Department granted her request for extended
7  leave but violated the ADA by denying her request for
8  sick leave with half-pay in failing to engage in an
9  interactive process to determine how the police
10 department could provide her with an accommodation.
11 That's at paragraph 6 and 8.
12         Plaintiff also alleges the Suffolk County
13 Police Department discriminated against her because of
14 her disability and denied her an accommodation under New
15 York State Human Rights Law.
16         Within the complaint itself, not by way of
17 separate motion, the plaintiff reserves the right to
18 amend her complaint to include ADA and New York State
19 Human Rights Law discrimination claims for coworkers, who
20 were also subject to the alleged discriminatory policy or
21 in the alternative, to consolidate the individual cases
22 for a joint trial.  That's at paragraph 20.
23         Just moving to the particular claims, first the
24 FMLA interference claim, defendants argue that plaintiff
25 has not adequately pled a claim of FMLA interference.

Proceedings

5

1  They argue that her claims are conclusory and that she's
2  not able to establish her entitlement to FMLA leave.
3  Defendants point to the fact that plaintiff does not
4  attach a copy of her FMLA application to her complaint
5  and argue that she did not plead facts sufficient to
6  allege her leave was medically necessary.
7            They also argue that plaintiff could not
8  establish her entitlement to FMLA leave because she did
9  not give thirty-days notice or make a reasonable effort
10 to schedule treatment, so as not to unduly disrupt the
11 operations of the police department.
12           I find that the plaintiff has pled sufficient
13 facts to state a plausible FMLA interference claim.
14 Under the FMLA, "an eligible employee shall be entitled
15 to a total of twelve work weeks of leave during any
16 twelve-month period," in order to care for a child with a
17 "serious health condition."  That's Section
18 2612(a)(1)(C).
19           FMLA leave to care for an employee's child may
20 be taken intermittently or on a reduced leave schedule
21 when medically necessary.  That's 2612(b)(1).  To prove a
22 violation of the FMLA, a plaintiff must establish (1)
23 that she's an eligible employee under the FMLA.  (2) that
24 defendants constitute an employer under the FMLA.  (3)
25 that she was entitled to leave under FMLA.  (4) that she

                                                                6
                              Proceedings

1   gave notice to defendants of her intention to take leave
2   and (5) defendants denied her benefits to which she is
3   entitled by the FMLA.  That's Roberts v. Ground Handling,
4   Inc., 2007 U.S. District Lexis 23441 at page 25 (SDNY,
5   March 30th, 2007).
6          The complaint here alleges that plaintiff
7   requested FMLA leave on May 14th, 2013 after her son
8   became -- began suffering from severe behavioral and
9   mental disorders.  In her complaint, she states that when
10  she submitted her application, she included a verified
11  medical certificate from her son's healthcare provider,
12  which included a description of his condition, the date
13  the condition began, its estimated duration to be
14  approximately one month, though "impossible to predict
15  with certainty."  And stated that plaintiff needed to
16  work intermittently on less than a full schedule,
17  "ongoing, indefinitely," for her son's continuing
18  treatment.  That's at paragraphs 49 through 53.
19         Plaintiff further alleges that her son was
20  unable to attend school because of his serious health
21  conditions and her son needed assistance for basic
22  medical and personal needs, transportation and
23  psychological comfort.  That's paragraphs 41 through 43.
24         She also alleges she received a letter from the
25  Acting Director of Labor Relations for Suffolk County on

7

Proceedings

1   May 23rd, 2013, denying her FMLA request and that she was
2   not given an opportunity to cure any purported
3   deficiencies.  That's at paragraphs 54 through 56.
4           Taken as true, and drawing all reasonable
5   inferences in the plaintiff's favor, a plausible claim
6   would exist, given those facts.  She efficiently alleges
7   that her intermittent leave was medically necessary.  To
8   the extent the defendant's argument is that there was no
9   FMLA application attached to a complaint, the Court is
10  not aware of any pleading requirement that requires a
11  plaintiff to attach a particular document to the
12  complaint.  If the document was lost, you could still
13  allege what the document stated.  It obviously would come
14  down to a credibility determination.
15          Certainly if the defendants wanted the Court to
16  consider the contents of such an application, they could
17  because it's incorporated by reference in the complaint,
18  they could have submitted it but it's not done here.  To
19  the extent defendants argue that plaintiff's FMLA
20  application, had it been attached, would demonstrate the
21  certifications did not meet the requirements of the act,
22  obviously that type of factual determination can't be
23  done on this -- based on the pleading alone, without the
24  document and therefore, I don't believe that the claim
25  cannot proceed as a matter of law at this point in the

Proceedings

8

1 case.

2 Defendants argue that plaintiff was required to 3 provide thirty-days notice to make a reasonable effort to 4 schedule the treatment, so as not to disrupt unduly the 5 operations of the employee but under Section 2612(e), 6 these requirements only apply when the leave is 7 foreseeable.  Since plaintiff alleges that care for her 8 son that was required ongoing, indefinitely, there's at 9 least again at this stage of the case, a question as to 10 what was foreseeable and not foreseeable and whether or 11 not a reasonable effort could be made with respect to any 12 scheduled treatments.

13 But so drawing all reasonable efforts in the 14 plaintiff's favor, again I don't believe that I can 15 conclude as a matter of law at this juncture that this 16 claim cannot prevail.  She has sufficiently pled 17 plausible claim for entitled to FMLA leave that she did 18 not receive.

19 I also note obviously with respect to -- 20 there's also an issue of whether or not any opportunity 21 was given to cure any purported deficiencies, as Section 22 of the regulation, 29 CFR Section 825.301(a) makes clear 23 that "In any circumstance, when the employer does not 24 have sufficient information about the reason for an 25 employee's use of leave, the employer should inquire

9

Proceedings

1  further of the employee or the spokesperson to ascertain
2  whether leave is potentially FMLA-qualified."
3           And that's obviously another issue that can't
4  be resolved at this point, just simply based upon the
5  pleading.  So the motion to dismiss that claim is denied.
6           Similarly, moving to the ADA claim, that is
7  also denied for the following reasons.  Defendants argue
8  that plaintiff's claim under the ADA should be dismissed
9  because she fails to allege she suffered an adverse
10 employment action.  Defendants assert that plaintiff's
11 request for a medical leave was granted and that the
12 police department's denial of leave with half-pay was
13 merely a denial of a contractual benefit based upon the
14 police department's interpretation of the collective
15 bargaining agreement.
16          There is no question that denial of a pay is a
17 material loss of benefits and therefore would qualify as
18 an adverse employment action.  An adverse employment
19 action is any material or adverse change in the terms and
20 conditions of employment, as the Second Circuit has
21 repeatedly noted and the Supreme Court including Weeks v.
22 New York State Division of Parole, 273 F.3d 76 at page 85
23 (2d. Cir. 2001).  So a denial of pay would certainly
24 qualify as an adverse employment action.
25          To the extent defendants assert that the

```
                                                              10
                          Proceedings
 1   determination was the result of a contract interpretation
 2   in connection with the collective bargaining agreement, I
 3   believe that that's an articulated non-discriminatory
 4   reason for the withholding of pay and for the adverse
 5   action that's alleged here but again at this stage, I
 6   cannot make a determination and weigh that explanation
 7   and it remains a question of fact at the pleading stage
 8   to whether the plaintiff's disability was a motivating
 9   factor in the police department's denial of leave with
10   half-pay or in their interpretation of the collective
11   bargaining agreement, for that matter, depending upon the
12   surrounding circumstances.
13             Moving to the failure to accommodate theory,
14   defendants also argue the plaintiff failed to plead facts
15   sufficiently allege that she was denied an accommodation
16   under the ADA.  Defendants assert that plaintiff's
17   complaint is completely devoid of factual allegations
18   that she was qualified to do the job with a reasonable
19   accommodation and that she requested an accommodation,
20   which would have allowed her to perform her job.  They
21   argued that she did not identify a barrier to job
22   performance or an accommodation to remedy that barrier.
23             Just very briefly on the law, discrimination in
24   violation of the ADA includes not making reasonable
25   accommodations to the known physical or mental
```

                                                                11
                              Proceedings

1  limitations that an otherwise qualified individual with a
2  disability, McBride v. BIC Consumer Products
3  Manufacturing Co., 583 F.3d 92 at 96 (2d. Cir 2009),
4  quoting the statute.  "A qualified individual under the
5  ADA is an individual who with or without a reasonable
6  accommodation can perform the essential functions of the
7  employment position That such individual holds or
8  desires."  That's 42 USC Section 12111(8).
9           Accordingly, a plaintiff can establish a prima
10 facie claim of discrimination, disability discrimination
11 based on failure to accommodate a disability by proving
12 the following elements:  (1) Plaintiff is a person with a
13 disability under the meaning of the ADA.  (2) An employer
14 covered by the statute had notice of this disability.
15 (3) With reasonable accommodation, plaintiff could
16 perform the essential functions of the job at issue and
17 (4), the employer had refused to make such
18 accommodations.  McBride v. City of New York, 711 F.3d
19 120 at 125 and 26, (2d. Cir. 2013).
20          "The Second Circuit has held that while it is
21 generally the employee's responsibility to request an
22 accommodation, an employer has a duty to reasonably
23 accommodate an employee's disability if the disability is
24 obvious, which is to say if the employer knew or
25 reasonably should have known that the employee was

```
                                                            12
                         Proceedings
```

1 disabled." Brady v. Walmart Stores, 531 F.3d at 127 and
2 135 (2d.Cir. 2008).
3          In such cases, the employer's duty to engage in
4 an interactive process with the employee to determine if
5 the employee can be reasonably accommodated. That duty
6 then is triggered. That's again explained in the Brady
7 v. Walmart Stores case, as well as a case I wrote several
8 years ago, Cassseus v. Verizon NY, 722 F.Supp 2d 326
9 (EDNY 2010).
10         Viewing the complaint in the light most
11 favorable to the plaintiff, certainly there could be a
12 reasonable inference from the surrounding circumstances
13 in the nature of the alleged disability, that the
14 defendants knew that the plaintiff had a disability
15 because she submitted a request for medical leave of
16 absence on the basis of her disability and the allegation
17 is that the police department nonetheless failed to
18 engage in the required interactive process to determine
19 whether plaintiff could reasonably be accommodated.
20         So again, I think it's a plausible claim.
21 These other issues that have been raised by the
22 defendants on both of these claims, obviously can be
23 raised at the summary judgment stage, once the Court is
24 permitted to look at the entire record after discovery is
25 complete.

13

Proceedings

1  Finally, on the state law claims, defendants
2 argue that plaintiff's state law claim should be
3 dismissed because plaintiff failed to serve a notice of
4 claim within that ninety-day period required by New York
5 County Law Section 52.
6  I've set forth the law in great detail as it
7 relates not just to the notice of claim requirement but
8 the specific issue as it relates to discrimination cases
9 and whether or not they can be brought in the public
10 interest.  So I am not going to repeat all the law that
11 I've set forth.  I'll just cite the two opinions.  One is
12 Scaggs v. Department of Education, 2007 WL 1456221 (EDNY
13 2007) and Johnson v. County of Nassau, 2014 WL 4700025
14 (EDNY 2014).
15  But just by way of a quick summary, all actions
16 brought to enforce civil rights can be said to be in the
17 public interest.  The New York Court of Appeals has
18 reserved the exception to the notice requirement where
19 cases or actions were brought to protect an important
20 right which seek relief for a similarly situated class of
21 the public and whose resolution would directly effect the
22 rights of that class or group.
23  As I further laid out in those opinions, some
24 courts have held that where damages are sought, a claim
25 under the New York Rights Law does not vindicate a public

14

Proceedings

1  interest and I cited those cases that suggest that.
2  However, in this case, the plaintiff seeks more than just
3  monetary damages.  The plaintiff also seeks an injunction
4  and order directing defendants to create and implement
5  new procedures and I will note in a moment, I noted it at
6  the beginning, there's also a potential amendment that
7  could take place to add additional plaintiffs and/or
8  claims.  So it's possible here that this could be a
9  situation where it's not simply to address the
10 plaintiff's own individual situation, but it could may be
11 seeking to attack a policy that is affecting other
12 individuals, that it could directly affect or vindicate
13 the rights of others.
14          And so I just want to make clear that I am not
15 determining that the failure to file a notice of claim is
16 excused.  I'm just determining that it's premature to
17 make this determination because it may depend again on
18 whether or not there are other people who are out there
19 who would be impacted if this lawsuit were to succeed and
20 I just think it's premature.
21          In addition, if I were to decide that the
22 federal claims were not going to ultimately proceed
23 beyond summary judgment, then I would decline
24 supplemental jurisdiction on this issue and the state
25 court would decide whether or not the notice of claim

Proceedings
15

1  requirement is excused or not.
2            So for that reason, I am denying this portion
3  of the motion, again without prejudice to the defendant's
4  raising it again at the summary judgment stage of the
5  case.
6            And finally, as I noted in the beginning,
7  defendants addressed the amendment issue because it's
8  embedded within the complaint but I think it's premature.
9  There's been motion, formal motion to amend.  I don't
10 know what additional plaintiffs and/or claims would be.
11 So I don't think the Court should be addressing this in
12 the abstract.  If the plaintiffs ever made a formal
13 motion to amend or to consolidate individual cases for a
14 joint trial, obviously the Court would request briefing
15 on that issue at that time.
16           All right.  So I don't know -- have you already
17 been before Judge Brown in this connection with the
18 discovery schedule or has he been awaiting the outcome of
19 this motion?
20           MS. O'DONNELL:  We've been waiting, your Honor.
21           THE COURT:  Okay.  So it will be made clear.
22 It will be clear on the docket that I've decided the
23 motion and the case should proceed to discovery and we'll
24 also contact his chambers, so they know.  So I assume
25 he'll set up a conference with both of you.  All right.

```
                                                                  16
                           Proceedings
 1            MS. O'DONNELL:  Great.
 2            THE COURT:  All right.  Thank you very much.
 3   Have a good day.
 4            MR. MOSER:  Thank you, your Honor.
 5            MS. O'DONNELL:  Thank you, your Honor.  Okay.
 6   Goodbye.
 7                     (Matter concluded)
 8                          -oOo-
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

17

# C E R T I F I C A T E

    I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

    I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

    IN WITNESS WHEREOF, I hereunto set my hand this **2nd** day of **March**, 2016.

*Linda Ferrara*
Linda Ferrara

CET**D 656

Transcriptions Plus II, Inc.